Good morning, Your Honors, and may it please the Court, Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Mr. Torlucci. Since the day Mr. Torlucci was convicted, he's tried his darndest to challenge this conviction. Now, he has a lot of problems. He has a lot of mental health problems and has often gotten in the way of that. But in any case, he filed a number of petitions in both state court and federal court in an attempt to challenge this conviction. Now, the district court dismissed his petition as untimely, finding that he hadn't met the AADP statute of limitations. That statute, though, is subject both to equitable tolling and statutory tolling, and accounting for those, his petition was timely. First, statutory tolling. The law provides that any time there's post-collateral or collateral challenges to the conviction pending in state court, that time that it's pending does not count against the statute of limitations. Here, Mr. Torlucci followed a somewhat unconventional method of challenging his state court conviction, but nonetheless one that was proper, at least the best that he could do given his limitations. Notably, it wasn't until the very end of this case that this even became an issue. That is, at the outset of the case, the state assumed, for the purposes of its motion to dismiss, that he was entitled to statutory tolling from the very first moment his petition was filed until the California Supreme Court denied his last petition, both in his motion to dismiss and his answer to the petition. So the only time period that was really litigated in the district court was that period between the denial, the California Supreme Court's last denial of his last petition and his filing of the federal habeas petition. Now, that was February 19, 2003. The California Supreme Court denied. That was the last denial, right? That's correct, Your Honor. And he filed his federal petition then November 18, 2004. Is that right? That's right. Accounting for the mailbox rule, we'll give him another week before that, but November 10. All right. So that's really the period of time that was litigated in the district court. And that gets us to the question of equitable tolling. Now, what happens, we litigate this on the merits because the state suggested that that might be the easiest way to go. And after the magistrate judge found that he was inclined to grant the petition on the merits, then they decided that we'd better go to the timeliness because, obviously, if the petition was untimely, it wouldn't matter whether he was going to grant relief on the merits. So we did that, and we submitted a report of our psychiatrist who examined him, and he said, Mr. Colucci suffers from very serious mental health problems and psychiatric disabilities. He has bipolar affective disorder. There's paranoia. There's serious mood disorder that affects the way he can process information and concentrate. But what he couldn't say was that of this period, which was one year and eight months, obviously beyond the statute of limitations, that at any particular time during this period he couldn't function. And part of that is because Mr. Colucci was in prison, and the prison records, although sometimes voluminous, don't really address that. So he can't – and this is not a condition that is continuous. He cycles in and out. So we couldn't say for definite sure that there were X number of days that Mr. Colucci was incompetent or unable to manage his affairs. And that's the basis that the district court actually denied the petition the primary basis. And I submit – It looks like it might be pretty reasonable in light of the evidentiary record. The problem with that is that equitable tolling obviously is an equitable doctrine, and the principle is that we're going to excuse a late filing when some extraordinary circumstance prevented a timely filing. And, again, we admit that we have the burden of proof on that issue. So what we have here is fairly extensive evidence that there are problems with this man's mental health that actually stood in the way of his filing. He filed a number of them. He filed a number of them, yeah. He filed – I didn't count them, one, two, three, four, six, maybe – and I'm just – that's just an estimate, but six or seven petitions before this one, right? That's correct, Your Honor. I mean, so he was able to file. It's not like he was shy about filing petitions. Well, as some of the evidence shows, almost all those petitions, or at least according to Mr. Trulich, all those petitions were prepared by fellow inmates. Other people, other inmates, right. Lots of times inmates in the psychiatric ward with him. So, you know, it's sort of – there's a fortuity about it, whether or not he can get something on file. If he happens to be housed with someone who can do this, then he can file something. If he's left to his own devices, he can't. So it's still the underlying psychiatric disability that prevents him from filing. That he can file some and not others is, like I said, a fortuity. So the principle being that if ectotoling means that we're going to excuse a late filing when something out of his control prevented him from filing, then you have to allow a little leeway when in this kind of situation. Where do we draw the line, though? I mean, he's certainly not the only inmate with emotional or psychological problems. I mean, how can we quantify this? I mean, because what you've got is EDPA gives you the one-year statute of limitations. There it is. And we recognize that there have to be equitable exceptions to that. But typically we require, for example, a lockdown. Well, I didn't have access to the prison library from June 1st to August 1st because it was being renovated or whatever reason. So there are periods of time, specific periods of time. Here you're saying, well, this guy has emotional problems, mental problems, psychological problems. Like many inmates do, and so we should just excuse it. I suspect that where the evidence shows that he has severe psychiatric difficulties that are specifically diagnosed that bear on his ability for long periods of time to properly file a federal habeas petition, then that would be sufficient without quantifying an exact number of days. It's enough that he has this generalized condition, not generalized condition, specific condition that's proved. And in that case, it's not enough that, you know, he just has problems. Here we have evidence, expert evidence that he has a specific problem that directly impacts his ability to file. Well, what you're saying is that AEDPA has such a harsh time limitation of a year that to ameliorate that, we ought to be generous in allowing equitable tolling. That's exactly my point, Your Honor. You see, every time courts make decisions, not every time, but that would allow a defendant to have a hearing, then the Congress comes in and places a roadblock in the path of the defendant. So the next thing you'll have is a statute that denies the applicability of equitable tolling. And that's why this whole system is so complicated with, you know, a variety of time limits and procedural hurdles. Because our Congress, this is just my opinion, has seen fit that any time a defendant can make a case for a hearing on a habeas petition, then that path is blocked. So it gets very, very complicated. But these are things that people with mental problems ought to know. Don't you think so? Yes, Your Honor, it's difficult enough for a lawyer to navigate the various barriers and roadblocks to ask an uneducated pro se litigant who suffers bipolar disorders to ask him to comply with a letter of the law in terms of this, I think, is not right and is accounted for in equitable tolling. Thank you. Okay, thank you. Good morning, Your Honors. May it please the Court. Supervising Deputy Attorney General Symona Castello appearing on behalf of Respondent. We do not have a case here where a petitioner was diligent throughout the timeframe at issue in order for him to obtain sufficient statutory and equitable tolling to render the petition, in this case, five years late, timely. I wanted to try to project your voice, okay? Thank you, Your Honor. All right. He waited far too long after filing his very first court of appeal habeas petition before then proceeding to the next court and then proceeded in a downward fashion, almost a full year. During that timeframe, there is no evidence, even by a petitioner's own expert, that his mental disorder affected his ability to do so. Looking at the timeline prepared by a petitioner's own expert, there is nothing in 1998. The timeframe at issue is May 98 to April of 99. That indicates that his depression, insomnia, and some other less severe possible mental statuses could have affected his ability to file. There's zero for 1999. There's no indication that throughout the entire year, 1999, he was unable to pursue his state habeas applications or his federal application. Nor do we have a situation here where this pro se inmate wasn't aware of his federal filing deadline. In fact, he did file a federal habeas petition in the district court in May of 1999, and that was dismissed at his request. In August of 1999, he filed a motion to extend the federal filing deadline. What should the standard be for equitable tolling? Should it be an objective impossibility? In other words, the law library was closed, or the prison was out of paper, so I couldn't write. Obviously, I'm making that up. But should it be something objective like that, or is it a subjective standard? This petitioner was prevented by something unique to him that prevented him from filing. Your Honor, I think it could be either, depending on the circumstances. If it's a mental illness, for example, then I do think we can look to the petitioner's mental illness, but there must be some causation, as this Court has held. So you must have a situation where mental status or mental disorder by itself is not enough. And in this case, we have an expert opining that despite his mental disorder, his cognitive functioning was within normal limits. That's his own expert's admission. And so in a situation where you have a mental disorder, you must then show that that somehow prevented you from filing your federal petition on time. And in this case, the petitioner has failed to meet that burden. The petitioner himself admits in his opening brief that there were time periods during which this inmate was able to process his state and federal applications. And in light of those concessions, he's unable to show entitlement to any equitable tolling. So given the 331 delay at the very outset, the next delay of eight months, during which time he filed numerous state court applications, it cannot be said that during that time frame his mental status prevented him from filing his next state court application, given all of the mandate petitions where he sought counsel, filing a motion to withdraw in the California Supreme Court. The statute of limitations would then have expired in June of 1999, well before the time that he even claims he should receive equitable tolling. So I would submit, if there are no further questions, that the petition is more than five years late, given that the statute expired in June of 1999. Thank you. All right, thank you. Any rebuttal? I think you pretty much beat up your time. All right, thank you.
judges: Mahan, Pregerson, Paez